# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

## OCTOBER 1999 SESSION

FILED

March 2, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | * | No. W1998-02116-CCA-R3-CD |
| **Appellee,** | * | SHELBY COUNTY |
| **V.** | * | Hon. James C. Beasley, Jr., Judge |
| **BYRON A. PEETE,** | * | (Second Degree Murder) |
| **Appellant.** | * | |

For Appellant

Gerald S. Green
147 Jefferson Avenue, Suite 404
Memphis, TN 38103

For Appellee

Paul G. Summers
Attorney General and Reporter
425 Fifth Avenue North
Nashville, TN 37243-0493

J. Ross Dyer
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243-0493

Thomas Henderson
Dawn Doran
Assistant District Attorneys General
Criminal Justice Complex, Suite 301
201 Poplar Avenue
Memphis, TN 38103

OPINION FILED:

AFFIRMED

NORMA MCGEE OGLE, JUDGE

**OPINION**

The appellant, Byron A. Peete, appeals his conviction in the Shelby County Criminal Court of second degree murder. Pursuant to the appellant's conviction, the trial court sentenced the appellant to thirteen years and six months incarceration in the Tennessee Department of Correction. On appeal, the appellant challenges the sufficiency of the evidence underlying his conviction. Although not clearly articulated, his argument appears to encompass the following specific contentions: (1) the evidence presented at trial concerning his low intellectual quotient (I.Q.) precluded a finding that the killing was knowing as required by Tenn. Code Ann. § 39-13-210(a)(1) (1997); (2) alternatively, in light of the evidence concerning the appellant's low I.Q., the record demonstrates the provocation required by Tenn. Code Ann. § 39-13-211(a) (1997); or (3) in light of the evidence concerning his low I.Q., the record demonstrates that the appellant killed the victim, Terrance Baker, in self-defense within the meaning of Tenn. Code Ann. § 39-11-611(a) (1997). Following a thorough review of the record and the parties' briefs, we affirm the judgment of the trial court.

## I. Factual Background

The evidence adduced at trial established that, on the evening of March 24, 1997, the appellant, who was almost eighteen years old, stabbed nineteen year old Terrance Baker in the neck. The knife cut through Terrance's jugular vein and penetrated his left lung. As a result of the stab wound, Terrance died en route to the hospital.

The evidence further revealed that, prior to the stabbing, both the appellant and Terrance lived on Breedlove Street in Shelby County. According to Terrance's mother, Shirley Baker, the appellant and Terrance "grew up together, went to school together," and were "real close." Ms. Baker additionally recalled that, although the two friends "teased" one another and occasionally argued, they always reconciled. Indeed, Darnell Deener, a five year acquaintance of both the appellant and Terrance, testified that the two friends enjoyed "checking" or exchanging insults.

2

Darnell and other acquaintances or friends asserted that neither individual possessed a reputation for violence.

On the evening of the stabbing, the appellant and Terrance encountered one another on Breedlove Street. They began exchanging insults, but the verbal exchange soon escalated into a pushing match. Following the argument, the appellant walked home and obtained a knife before returning to the street in search of Terrance. The appellant quickly located Terrance, who stated that he did not wish to fight with the appellant. Nevertheless, the appellant swung his fist at Terrance and, when Terrance attempted to return the punch, stabbed Terrance in the neck.

The appellant testified on his own behalf at trial. He claimed that Terrance threatened to kill him on the day of the stabbing and that he obtained the knife from his house solely for the purpose of defending himself. However, he conceded that, upon obtaining the knife, he went in search of Terrance, "looking for trouble." The appellant also asserted that, immediately prior to the stabbing, he observed Terrance attempt to reach into his pocket and believed that Terrance was attempting to secure a weapon. However, he conceded that he never observed Terrance carrying any weapon on the day of the stabbing and that, to his knowledge, the police did not recover any weapon from Terrance or the scene of the stabbing. Finally, the appellant acknowledged that he was physically larger than his former friend.

John Robert Hutson, a clinical psychologist, also testified on the appellant's behalf. Dr. Hutson stated that he had been asked by the trial court to conduct an evaluation of the appellant's intellectual ability and also the appellant's competence to stand trial and his mental condition at the time of the offense. Accordingly, he interviewed the appellant for approximately one hour, during which interview he administered the Wechsler Adult Intelligence Scale. On the basis of this interview, he determined that the appellant was competent to stand trial.

3

Moreover, the appellant "really had no significant psychiatric history either of treatment or of known psychiatric or psychological problems which would be sufficient to substantiate a defense of insanity." Finally, he testified that the Wechsler Adult Intelligence Scale revealed a full scale I.Q. of seventy-four (74).

Dr. Hutson conceded that the appellant is not mentally retarded. Moreover, Dr. Hutson agreed that the appellant's thought processes are normal, and the appellant exhibits no indications of delusions, hallucinations, or other "disorders of perception." Nevertheless, he opined that the appellant would be "somewhat more limited in his ability to interpret either other's communications or other's behavior toward him." He further observed that

> [i]n any situation in which [the appellant] had to make a choice - whether it's a matter of danger or not, you would have a limited - a more limited range than a normal person in terms of what he perceived his possible responses could be.

Finally, Dr. Hutson acknowledged that the appellant would be fully capable of understanding the words, "I don't want to fight you."

## II. Analysis

When the sufficiency of the evidence is challenged on appeal, our standard of review is whether any "reasonable trier of fact" could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e). In other words, the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). In contrast, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefore. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact and not the appellate courts. State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990). These rules

4

are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both.  State v. Nesbit, 978 S.W.2d 872, 898 (Tenn. 1998), cert. denied, __ U.S. __, 119 S.Ct. 1359 (1999).

The appellant first argues that Dr. Hutson's testimony established the appellant's inability or "diminished capacity" to form the mental state required for second degree murder.  See State v. Hall, 958 S.W.2d 679, 688 (Tenn. 1997); State v. Profitt, No. 03C01-9712-CC-00530, 1999 WL 349699, at *3 (Tenn. Crim. App. at Knoxville, June 2, 1999).  Second degree murder requires the "knowing" killing of another.  Tenn. Code Ann. § 39-13-210(a)(1).  Tenn. Code Ann. § 39-11-106(a)(20) (1996) provides the following definition of "knowing":

> "Knowing" refers to a person who acts knowingly with respect to the nature of the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist.  A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result.

Again, Dr. Hutson testified that the appellant, although not mentally retarded, possesses a low I.Q. and a "somewhat limited" ability to interpret another individual's communications or conduct and to comprehend a full range of potential responses to those communications or that conduct.  We note that this testimony by itself in no way precluded a finding that the appellant knowingly killed Terrance Baker.  Moreover, in contrast to this testimony, Ms. Baker testified that she had known the appellant since he was a baby and had never noticed "anything wrong mentally" with the appellant.  Other longtime friends or acquaintances similarly testified that they had never noticed anything wrong with the appellant.  A jury is not bound to accept the testimony of an expert to the exclusion of other testimony Nesbit, 978 S.W.2d at 886 (citing State v. Sparks, 891 S.W.2d 607, 616 (Tenn.1995)).  Thus, we must defer to the jury's determination that the appellant was capable of forming the requisite mental state.  State v. Durham, No. 03C01-9802-CR-00063, 1999 WL 528726, at *11 (Tenn. Crim. App. at Knoxville, July 26, 1999), perm. to appeal denied, (Tenn. 2000).

5

The appellant also argues that the evidence adduced at trial concerning his low I.Q. warranted either a finding of the lesser included offense of voluntary manslaughter under Tenn. Code Ann. § 39-13-211(a) or, alternatively, self-defense under Tenn. Code Ann. § 39-11-611(a). However, this court has previously held that, in order to establish the provocation required by Tenn. Code Ann. § 39-13-211(a) or self-defense pursuant to Tenn. Code Ann. § 39-11-611(a), a defendant's mental state must meet an objective standard of reasonableness. See State v. Bult, 989 S.W.2d 730, 732 (Tenn.Crim.App. 1998), perm. to appeal denied, (Tenn. 1999)(self-defense); State v. Skidmore, No. 03C01-9502-CR-00039, 1997 WL 199061, at *8 (Tenn. Crim. App. at Knoxville, April 24, 1997)(voluntary manslaughter). In sum, the evidence adduced at trial amply supports the jury's verdict, and the appellant's contentions are without merit.

### III.  Conclusion

For the foregoing reasons, we affirm the judgment of the trial court.


_____
_____Norma McGee Ogle, Judge


CONCUR:

_____
John H. Peay, Judge


_____
Alan E. Glenn, Judge

6